UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MELISHA Y. HAYDEN,                    )
                                      )
Plaintiff,                            )
                                      )
v.                                    )
                                      )    Case No. 4:19-CV-187-SPM
                                      )
                                      )
                                      )
ANDREW M. SAUL, [1]                   )
Commissioner of Social Security,      )
                                      )
Defendant.                            )


## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner")

denying the application of Plaintiff Melisha Y. Hayden ("Plaintiff") for Disability Insurance

Benefits ("DIB") and a Period of Disability under Title II of the Social Security Act, 42 U.S.C.

§§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of

the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the

decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's

denial of Plaintiff's application.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

# I.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c),

416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

In July 2014, Plaintiff applied for DIB, SSI, and a Period of Disability, alleging that she had been unable to work since December 31, 2013. (Tr. 128, 132). Her applications were initially denied, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 76-80, 84-87). On September 6, 2016, after a hearing, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability as defined in the Act. (Tr. 12-20). The Appeals Council declined to review the ALJ's decision. (Tr. 1-6). Plaintiff filed a complaint in this Court, seeking review of the decision. (Tr. 531). Pursuant to a motion to remand filed by the Commissioner, this Court entered an order remanding the case for further proceedings. (Tr. 540-42). On April 3, 2018, the Appeals Council remanded Plaintiff's claims to Defendant. (Tr. 545-49).

On September 6, 2018, the ALJ held a supplemental hearing on Plaintiff's case. (Tr. 457-509). Vocational expert ("VE") James E. Israel testified at the supplemental hearing before the ALJ. (Tr. 490-505). His résumé, which was in the record before the ALJ, shows that at the time of the hearing, Mr. Israel had more than thirty years of relevant experience working as a vocational rehabilitation counselor and consultant, and he was a certified vocational evaluator and rehabilitation counselor. (Tr. 490, 769-70). Plaintiff's counsel stipulated to the VE's qualifications. (Tr. 490). At the hearing, the VE answered questions from the ALJ about several hypothetical individuals and the jobs they could or could not do. (Tr. 490-595). When asked about a hypothetical individual with Plaintiff's RFC, the VE testified that such a person could work as a

---

[2] Because Plaintiff challenges only the ALJ's findings at Step Five of the five-step process, the Court focuses primarily on the background facts relevant to the ALJ's Step Five findings.

product inspector, Dictionary of Occupational Titles (DOT) No. 529.687-186 (45,000-plus jobs); assembler, DOT No. 794.687-042 (83,000 jobs), or packer, DOT No. 920.685-026 (72,000 jobs). (Tr. 491-93, 503-04).[3] The VE did not offer testimony regarding regional availability of jobs. Plaintiff's counsel did not have any follow-up questions about this testimony. (Tr. 502). Close to the end of the hearing, the ALJ and the VE then had the following exchange:

> ALJ: Mr. Israel, has your testimony today been consistent with the DOT, or have we touched upon topics that are not addressed in the DOT, and the basis for those responses?
>
> VE: Yes. Many responses on work tolerances, all of those are based on field experience in the field of vocational rehabilitation, 30-plus years. Earlier questions—earlier designations on specific vocational preparation like home health attendant is from the DOT. Exertion levels, DOT or as noted in testimony. Job numbers, not based on the DOT, but rather Bureau of Labor Statistics, Employment Statistics Quarterly, extrapolating through Job Browser Pro and not the DOT.

(Tr. 505). Plaintiff's counsel did not challenge the job numbers offered by the VE at the hearing, did not question the VE regarding the methodology underlying the job numbers, and did not challenge the job numbers in any post-hearing submissions or submissions to the Appeals Council.

On November 15, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not under a disability as defined in the Act. (Tr. 437-49). Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since December 31, 2013, the alleged onset date; that Plaintiff had the severe impairments of degenerative joint disease of both knees, degenerative disc disease and degenerative joint disease of the lumbar spine, soft tissue calcification in the right foot, anxiety, a major depressive disorder, post-traumatic stress

---

[3] In her brief and Statement of Uncontroverted Material Facts, Plaintiff appears to suggest that the VE testified that these numbers would be reduced by 10%. However, as Defendant points out, the 10% erosion only applied to a hypothetical question including a limitation not ultimately accepted by the ALJ. (Tr. 443, 493-94).

disorder, a learning disability, and borderline intellectual functioning; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 440). The ALJ found that Plaintiff had the RFC to perform light work, except that she should never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs and balance, stoop, crouch, and crawl; must avoid concentrated exposure to wetness, humidity, and vibration; must avoid all exposure to operational control of moving machinery and unprotected heights; and was limited to jobs that involve only simple, routine tasks in a low stress work environment (defined as having only occasional, simple, work-related decisions; only occasional changes in the work setting; and only end of the day production measurements). (Tr. 443). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 447).

At Step Five, the ALJ stated:

> To determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as product inspector (DOT job number 529.687-186); 35,000 jobs in the national economy, assembly (DOT job number 794.687-042), and packer (DOT job number 920.685-026); 72,000 jobs in the national economy.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 449). The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 448-49). Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from December 31, 2013, through the date of his decision. (Tr. 449).

Plaintiff did not file a request for review of the ALJ's decision with the Appeals Council. Instead, she filed her current complaint in this Court. Plaintiff now challenges the ALJ's decision on two grounds: (1) that the ALJ erred at Step Five by relying on VE testimony that lacked a reliable basis; and (2) that the ALJ erred at Step Five by failing to elicit and consider evidence regarding the availability of jobs existing in significant numbers either in the region where Plaintiff lives or in several regions of the country. Plaintiff has submitted new evidence to the Court that tends to undermine the VE's testimony regarding available job numbers.

## III.   DISCUSSION

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that

decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  Whether the ALJ Erred in Relying on the Testimony of the VE

Plaintiff's first argument is that the ALJ erred at Step Five by relying on the testimony of the VE regarding job numbers without adequately considering the VE's sources and methods, looking for indicia of reliability in the VE's opinion, or articulating findings regarding whether the VE's explanation of the testimony was reasonable.

At Step Five, it is the Commissioner's burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek*, 139 S. Ct. at 1152. Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Id.* "They must have 'expertise' and 'current knowledge' of  '[w]orking conditions and physical demands of various' jobs; '[k]nowledge of the existence and numbers of [those jobs] in the national economy'; and '[i]nvolvement in or knowledge of placing adult workers[] with

disabilities[] into jobs.'" *Id.* (quoting SSA, Hearings, Appeals, and Litigation Law Manual I-2-5-50 (Aug. 29, 2014)). "Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities." *Id.* "When offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" *Id.* at 1152-53 (quoting Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2).

It is well established that "[t]he Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). However, there are some limitations on the ALJ's ability to rely on VE testimony. For example, "when a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence." *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (internal quotation marks omitted). *See also Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011) ("Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.") (quoting *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007)). There is no dispute in the instant case that the hypothetical question in the instant case was based on a correctly phrased hypothetical question.

Additionally, ALJ cannot rely on testimony that conflicts (or appears to conflict) with information in the Dictionary of Occupational Titles ("DOT"), a reference book that lists the functional requirements for various jobs available in the national economy, without addressing and resolving the conflict. *See, e.g.*, *Stanton v. Comm'r, Soc. Sec. Admin.,* 899 F.3d 555, 558 (8th Cir. 2018); SSR 00-4p, 2000 WL 1898704, at *2-*4. In *Stanton*, the Eighth Circuit stated:

This court . . . long has held that before an ALJ can rely on a vocational expert's testimony that appears to conflict with a Dictionary [of Occupational Titles] listing, the ALJ must identify and resolve the conflict. Otherwise, the vocational expert's testimony is not substantial evidence to support a denial of benefits. S*ee Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997); *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995). In 2000, the Commissioner adopted this rule as its own in Social Security Ruling 00-4p, and we have continued to apply it. Whether the vocational expert's testimony is substantial evidence in support of the ALJ's decision thus depends on whether the expert's testimony appears to conflict with the Dictionary, and if so, whether the ALJ resolved the conflict.

*Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If there is a conflict between the VE testimony and the DOT, "[t]he adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony." *Id.* Moreover, "[t]he adjudicator will explain in the determination or decision how he or she resolved the conflict." *Id.*

In the instant case, Plaintiff does not contend that there is a conflict between the DOT and the VE's testimony, but only that the VE's testimony concerned matters not addressed by the DOT and thus did not have the DOT as a reliable basis. Plaintiff argues that "the ALJ must articulate findings regarding whether the VE's explanation for the testimony was 'reasonable and provides a basis for relying on the testimony' . . . regardless of whether the testimony is viewed as a 'conflict' with the DOT, inconsistent with the DOT, or if the testimony does not have the DOT as a reliable basis." Pl's. Br., at 6 (quoting SSR 00-4p). More specifically, Plaintiff argues:

[F]or extra-DOT VE testimony to be relied upon by an ALJ as substantial evidence, (1) the portion of the testimony that is extra-DOT must be explained by the VE; (2) such explanation must be sufficient to provide a reliable basis for the testimony; and (3) the ALJ, as the finder of fact, must articulate such a resolution or make a finding as to whether the VE's underlying data is sufficiently reliable to constitute

substantial evidence and to carry the Commissioner's burden of production at Step Five.

Pl.'s Br., Doc. 16, at 7. Plaintiff argues that because the VE did not provide an adequate explanation for his testimony and the ALJ did not make findings regarding the reliability of the data underlying the VE's testimony, the ALJ erred by relying on his testimony at Step Five.

The Court first notes that Plaintiff's position appears to be at odds with the Eighth Circuit's holding in *Courtney v. Commissioner*, 894 F.3d 1000, 1004-05 (8th Cir. 2018). In *Courtney*, the plaintiff argued that because the VE had offered testimony regarding limitations not addressed in the DOT, the "extra-DOT testimony required that the ALJ examine the VE for the basis of his reliance," and the ALJ erred by not conducting such an examination. *Id.* at 1003. The court rejected the plaintiff's argument. The court noted that "[t]he Social Security Administration (SSA) describes VEs as 'reliable sources of occupational information' and 'sources of occupational evidence.'" *Id.* at 1003-04 (quoting SSR 00-4p, 2000 WL 1898704, at *1-*2). It also noted that although SSR 00-4p requires the ALJ to resolve *conflicts* between the DOT and VE evidence, it "does not impose a duty on the ALJ to obtain a reasonable explanation when the VE simply testifies to information not found in the DOT—but that does not conflict with it." *Id.* at 1003. The court further stated, "We have consistently held that if 'substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.'" *Id.* at 1004 (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). It concluded, "unless a VE's testimony appears to conflict with the DOT, there is no *requirement* that an ALJ inquire as to the precise basis for the expert's testimony regarding the extra-DOT information." *Id.*

The authorities relied on by Plaintiff do not support her argument. Plaintiff first relies on Social Security Rule 00-4p, which requires the ALJ to inquire about, resolve, and articulate

findings regarding *conflicts* between the VE's testimony and the DOT, but which (as the Eighth

Circuit in *Courtney* recognized) does not impose any affirmative duties on the ALJ with regard to

relying on VE testimony that goes beyond, but does not conflict with, the DOT. Plaintiff also relies

on *Welsh v. Colvin*, 765 F.3d 926 (8th Cir. 2014); however, like SSR 00-4p, *Welsh* addresses only

the ALJ's duty to inquire about, address, and resolve conflicts between VE testimony and the

DOT.[4]

In her reply brief, Plaintiff also argues that the ALJ's reliance on the VE's testimony

violated SSR 00-4p because SSR 00-4p provides that "adjudicators may not rely on evidence

provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are

inconsistent with our regulatory policies or definitions," SSR 00-4p, 2000 WL 1898704, at *3, and

because Job Browser Pro's definition of "full time" (35 hours per week ) differs from the definition

of "full time" under the relevant regulations (40 hours per week). However, there is nothing in the

record to suggest that this highly experienced VE, whose qualifications were undisputed, was not

aware of this difference or that he did not account for it in making his job number estimates.

Moreover, the VE indicated he did not rely solely on Job Browser Pro, but on other sources as

well, and a reasonable interpretation of his testimony is that he considered information from

multiple sources and synthesized it in light of his own experience. The Court also notes that

Plaintiff directs the Court to no cases in which a court has reversed an ALJ's finding at Step Five

based on a VE's partial reliance on numbers from Job Browser Pro.

---

[4] The other Eighth Circuit cases relied on Plaintiff appear to address entirely unrelated issues and provide no guidance on the questions relevant to this case. *See Brock v. Astrue*, 574 F.3d 1062, 166-67 (8th Cir. 2012) (holding that where severe mental impairments were present, the ALJ erred by relying solely on the Medical-Vocational Guidelines instead of consulting a vocational expert); *King v. Astrue*, 564 F.3d 978, 978-79 (8th Cir. 2009) (same); *Wiley v. Apfel*, 171 F.3d 1190, 1191 (8th Cir. 1999) (remanding where the ALJ relied on the VE's answer to a hypothetical that was incomplete because it did not include all of Plaintiff's relevant limitations).

Plaintiff's reliance on the recent United States Supreme Court decision in *Biestek* is also misplaced. In *Biestek*, the Supreme Court held that a VE's refusal to provide the data underlying her opinion upon the claimant's request does not categorically preclude the VE's testimony from constituting "substantial evidence." *Biestek,* 139 S. Ct. at 1151. The Court noted that in determining whether an agency determination is supported by substantial evidence, a court "looks to an existing administrative record" and determines whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (internal quotation marks omitted). The Court rejected the plaintiff's argument that the refusal to provide data always interferes with effective cross-examination or that the absence of such testing always requires treating an opinion as unreliable, stating, "even without data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Id.* at 1156. The Court found that the issue of whether a VE's testimony constitutes substantial evidence must be determined on a "case-by-case" basis, taking into account "all features of the vocational expert's testimony, as well as the administrative record," while "defer[ring] to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157.

The Court's discussion in *Biestek* suggests several factors that might be relevant to the question of whether a "a reasonable mind" could accept the expert's testimony, including the VE's credentials, the number of years of experience the VE has, the VE's history of giving sound testimony about job availability in similar cases, the VE's testimony about how he or she arrived at her conclusions, whether the VE "answers cogently and thoroughly all questions put to her [or him] by the ALJ and the applicant's lawyer," whether anything in the record conflicts with anything the VE says, whether the claimant's attorney requested the supporting data on which the

VE relied, whether the VE produced the supporting data on which she or he relied, and whether the VE had a good reason for not disclosing the data on which she or he relied. *Id.* at 1155-57.

In *Biestek*, the Supreme Court did not set forth any requirement that an ALJ must inquire into the basis for a VE's testimony regarding job availability, nor did it set forth any requirement that the ALJ articulate any findings regarding the reliability of the basis for the VE's testimony. Thus, to the extent that Plaintiff is asking the Court to create a categorical rule that an ALJ may not rely on the extra-DOT testimony of a VE without obtaining an explanation for the basis of the extra-DOT testimony and making findings about whether the basis for the VE's testimony is sufficiently reliable to constitute substantial evidence, *Biestek* provides Plaintiff no assistance. In light of the Eighth Circuit's holding in *Courtney* and the lack of authority Plaintiff has provided for such a rule, the Court declines to create any such rule.

The Court next undertakes the case-by-case determination described in *Biestek* to determine whether, on the specific facts of this case, the testimony provided by the VE constituted substantial evidence to support the ALJ's finding at Step Five. The Court first considers the question of the new evidence Plaintiff has submitted to the Court that was not part of the record before the Commissioner. This evidence consists of letters from the United States Department of Labor's Bureau of Labor Statistics (dated in 2007 and 2014) indicating that the DOT is not used by, and regarded as obsolete by, the Bureau of Labor Statistics and that there is no data source that provides reliable DOT-level job incidence data; a printout from the "Specific Occupational – Unskilled Quarterly" stating that it contains estimates by unskilled, sedentary DOT job titles; a printout from a U.S. Publishing Occupational Statistics website describing its data and data sources; printouts from Job Browser Pro for the occupations cited by the DOT; and printouts related to Job Browser Pro and other sources of job numbers. (Pl's. Exhs. A-G). The Job Browser

Pro data cited by Plaintiff contains job numbers that are significantly lower than those testified to by the VE. (Pl's. Ex. E).

As Defendant points out, "Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Evidence outside the record may be considered, and the Court may direct the Commissioner to consider it on remand, "only upon a showing by the claimant 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id. See also Hepp v. Astrue*, 511 F.3d 789, 808 (8th Cir. 2008) ("The district court may remand a case to have additional evidence taken 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'") (quoting 42 U.S.C. § 405(g)). Plaintiff makes no attempt to show that there is good cause for the failure to incorporate this evidence into the record before the Commissioner. Instead, after the Commissioner raised this point in his response brief, Plaintiff clarified that this new evidence was submitted for the purpose of showing that the ALJ's errors in evaluating the VE's testimony were not harmless. Thus, the Court will not consider this new evidence for purposes of determining whether the ALJ's Step Five finding was supported by substantial evidence.[5]

---

[5] The Court acknowledges that the apparent discrepancy between the Job Browser Pro numbers and the VE's testimony is troubling. Had Plaintiff's new evidence been submitted to the Commissioner and made part of the record, it is not at all clear whether the Court would have found the Commissioner's Step Five finding was supported by substantial evidence. *See, e.g.*, *Pauline D. v. Comm'r*, No. 3:18-CV-01406-MC, 2019 WL 6131436, at * (D. Ore. Nov. 19, 2019) (remanding where the plaintiff questioned the VE's methodology at the hearing, submitted evidence of conflicting job numbers to the ALJ within six days of the hearing, and used the exact method and database relied on by the VE; finding that "the vast discrepancy between the VE's job numbers and those tendered by [Plaintiff], presumably from the same source, is simply too striking to be ignored") (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017)). *But see Kimberly P. v. Saul*, No. ED CV 17-2223-SP, at *4-*5 (finding no error where the ALJ relied on a VE's

After consideration of the evidence in the record in light of the factors discussed in *Biestek*, the Court finds substantial evidence to support the ALJ's reliance on the VE's testimony about the number of jobs a person with Plaintiff's RFC could perform. The VE's resume indicates that he had more than thirty years of relevant experience working as a vocational rehabilitation counselor and consultant, and he was a certified vocational evaluator and rehabilitation counselor. (Tr. 490. 769-70). Indeed, Plaintiff's counsel stipulated to the VE's qualifications. (Tr. 490). The VE cogently and thoroughly answered all of the questions put to him by the ALJ and by Plaintiff's lawyer. (Tr. 490-505). The VE testified about the sources on which he relied, and although Plaintiff's counsel had the opportunity to cross-examine him about the sources or methodology and to ask for the data on which he relied, Plaintiff's counsel did not do so. (Tr. 504-05). Plaintiff's counsel also did not submit any post-hearing evidence to the ALJ or the Appeals Council that undermined the VE's testimony. Nothing in the record before the ALJ conflicted with anything in the VE's testimony regarding the jobs available to someone with Plaintiff's RFC. On these facts, the Court concludes that there was sufficient evidence from which a "reasonable mind" could conclude that the VE's testimony was reliable and that the Commissioner had met his burden of showing that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

The Court notes that Plaintiff has cited no cases holding that similar evidence is not sufficient to support an ALJ's Step Five finding, nor has the Court's own research revealed any.

---

testimony where that testimony was based on Job Browser Pro and the plaintiff augmented the record after the hearing with printouts from Job Browser Pro showing lower job numbers than those stated by the VE; stating, "Courts in this district have found an ALJ is entitled to rely on a VE's testimony regarding the number of jobs in the economy, and have also found a plaintiff's lay assessment of raw vocational data from Job Browser Pro does not detract from the VE's opinion").

To the contrary, the Court's research has revealed many post-*Biestek* cases finding similar or less convincing VE evidence to constitute substantial evidence. *See Grome v. Comm'r*, No. 8:18-CV-2084-T-MCR, 2019 WL 4594597, at \*2-\*5 (M.D. Fla. Sept. 23, 2019) (affirming the ALJ's reliance on testimony regarding job numbers even where the plaintiff argued that they appeared to be grossly overstated even to a layperson and the numbers were inconsistent with job numbers in the Occupations Employment Statistics publication; noting that the plaintiff's attorney had stipulated to the VE's qualifications and had not questioned the job numbers cited or the methodology on which the ALJ relied and that "there is no requirement that an ALJ independently investigate and resolve conflicts between a VE's testimony and information provided by the OES regarding job availability figures"); *Dahl v. Saul*, Civ. No. 18-C-676, 2009 WL 4239829, at \*4 (E.D. Wis. Sept. 6, 2019) (rejecting the plaintiff's argument that the VE's testimony was without adequate reliable foundation where the VE testified about the numbers of certain light-work jobs the claimant could perform without the use of one arm, then testified that to obtain those numbers she looked at information from the U.S. Department of Labor, Bureau of Labor Statistics, the estimate numbers per SOC code, and information from Job Browser Pro, and made the best assessment as to which numbers seemed most appropriate; the court stated, "not only did [the claimant's] attorney not ask the VE for the supporting documentation, he elected not to even cross examine her. The VE's testimony thus stood not only unrefuted but unchallenged. Under these circumstances, the ALJ was entitled to rely on it in reaching his conclusion."); *Gomez v. Berryhill*, 2019 WL 5680841, Civ. Action No. 3:18-CV-11738, at \*7-\*9 (E.D. Mich. June 11, 2019) (holding that the VE's testimony about the jobs the plaintiff could perform constituted substantial evidence even where the VE admitted, on cross-examination, that the DOT was "antiquated" and that he did not have specific knowledge that the jobs identified still existed in the national economy;

noting that the VE had testified that he was familiar with jobs that exist in the national economy, that he had extensive experience in job placement, and that the DOT was the relied-upon standard in his industry), *report and recommendation adopted*, 2019 WL 3491621 (E.D. Mich. Aug. 1, 2019); *Tina E. v. Berryhill*, No. 1:17-cv-00649, 2019 WL 3229196, at *17-*18 (W.D. N.Y. July 18, 2019) (rejecting the plaintiff's argument that the ALJ erred by relying on a VE's testimony regarding job numbers and finding that substantial evidence supported the ALJ's Step Five finding where the VE testified that there were 8,830 surveillance system monitor jobs "but did not disclose how she made that determination").

Plaintiff also argues that the ALJ erred by failing to accurately recount the testimony of the VE in his decision. Specifically, Plaintiff appears to be referring to the ALJ's misstatement, in his decision, that there were 35,500 packer jobs in his decision (instead of 45,000 as the VE testified) and his failure to include in his decision the number of assembler jobs identified by the VE. The Court finds these to be harmless typographical errors.

For all of the above reasons, the Court finds substantial evidence to support the ALJ's reliance on the VE's testimony at Step Five.

### C. Whether the ALJ Erred by Failing to Elicit Evidence of Regional Job Numbers

Plaintiff's second argument is that the ALJ erred by failing to elicit and consider evidence showing the availability of jobs existing in significant numbers either in the region where Plaintiff lives or in several regions of the country. The Social Security Act states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with

respect to any individual), **"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.**

42 U.S.C. § 423(d)(2)(A) (emphasis added). *Accord* § 1382c(a)(3)(B). The relevant regulations further provide:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy."

20 C.F.R. §§ 404.1566, 416.966. The burden of showing the existence of work that exists in the national economy at Step Five of the sequential process is on the Commissioner. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Moore*, 572 F.3d at 523.

Plaintiff argues that the vocational evidence obtained by the ALJ was insufficient, because the vocational expert offered evidence only of jobs existing in the national economy and did not address how many of the identified jobs existed either in the region where Plaintiff lives or in several regions of the country.

Neither party directs the Court to any Eighth Circuit or Supreme Court cases squarely addressing the issue of whether a vocational expert's statement of the number jobs existing "in the national economy" is sufficient to satisfy the requirement of showing "work which exists in significant numbers . . . in several regions of the country." *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).[6] The Court's own research has not revealed any Eighth Circuit cases addressing the issue, and other courts addressing the issue have reached different conclusions. Some courts

---

[6] As Defendant points out, the Eighth Circuit has affirmed decisions relying on vocational expert testimony that cited national job numbers; however, it does not appear that the plaintiffs in those cases raised the issue Plaintiff raises in this case. *See, e.g.*, *Weiler v. Apfel*, 179 F.3d 1107, 1110 (8th Cir. 1999).

have found that evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that evidence of 25,000 jobs nationwide satisfied the requirement of showing "work which exists in significant numbers . . . in several regions of the country; reasoning that "[a] finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers,'" and therefore "the ALJ's national job finding satisfies § 1382c(a)(3)(B), because it represents a significant number of jobs in several regions of the country.") (citing 20 C.F.R. § 416.966(b)); *Vititoe v. Colvin*, 549 F. App'x 723, 731 (10th Cir. 2013) ("'[W]ork which exists in the national economy'" is defined by statute as "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Hence, stating that there are a number of jobs available in the national economy is, by definition, stating the incidence of jobs "in the region in which the individual resides or in several regions of the country."); *Hill v. Saul*, No. 4:18 CV 1329 DDN, 2019 WL 3947774, at *5 (E.D. Mo. Aug. 21, 2019) (finding "no precedential authorities indicating that the ALJ may not rely on national numbers alone to meet the Commissioner's burden of showing jobs that exist in 'significant numbers in the national economy'" and noting that "there is nothing in the nature of the jobs cited by the VE that suggests they are limited to only one or a few regions of the nation"); *John D.C. v. Comm'r of Soc. Sec.*, No. 17-CV-1116-CJP, 2018 WL 6018859, at *4-*5 (S.D. Ill. Nov. 16, 2018) (rejecting the argument that the ALJ erred by relying on testimony from the vocational expert that contained only national and not regional job numbers; stating, "Plaintiff does not argue the jobs the VE identified exist only in isolation or in concentrated regions. Any

such argument would be frivolous. The jobs identified by the VE (cleaner, kitchen helper, and laundry worker) are not regional."); *Nelson v. Colvin*, No. C12-5540 RJB, 2014 WL 372496, at *3-4 (W.D. Wash. Feb. 3, 2014) (holding that vocational expert testimony that there were 22,000 jobs nationally was sufficient to satisfy the Commissioner's burden at Step Five; stating, "plaintiff cites no cases stating that, in this context, the term 'several regions of the country' is not substantially the same as "nationwide," and the undersigned is not aware of any"); *Vining v. Astrue*, 720 F. Supp. 2d 126, 138 (D. Me. 2010) (noting that "courts have overlooked an absence of testimony that jobs do exist in several regions of the country when a reasonable mind could conclude that they do" and finding no error in Commissioner's reliance on nationwide job figures where "[n]othing in [the *DOT*] description indicates that this job would be found only in isolated areas, *versus* several regions of the country").

On the other hand, some courts have found that evidence of jobs existing nationally is not sufficient to show jobs existing in several regions of the country and have found that remand is required to develop more specific evidence regarding the regional availability of jobs. *See Webb v. Berryhill*, 294 F. Supp. 3d 824, 904 (D.S.D. 2018) (remanding where the ALJ relied on vocational expert testimony about the number of merchandise marker and housekeeping cleaner jobs "in the United States"; stating, "While this court might hazard a guess that there are substantial numbers of housekeeping cleaning jobs available in South Dakota, . . . or in several other regions in the country, this court is not allowed to guess about facts that might have been able to have been adduced at the agency level. The failure of proof requires remand to the agency to further develop the facts at step five."); *Britton v. Berryhill*, No. 4:17 CV 1956 DDN, 2018 WL 4332062, at *6 (E.D. Mo. Sept. 11, 2018) (finding ALJ erred by relying on testimony about the number of jobs available in the national economy; noting that "[a]s the case is being remanded on other issues

plaintiff has already raised, the Court directs the ALJ to also develop the record to show whether the jobs discussed above, assuming they are still found to be within plaintiff's RFC, exist in significant numbers 'where [plaintiff] lives or in several regions of the country'") (quoting 42 U.S.C. § 423(d)(2)(A)); *Price v. Comm'r of Soc. Sec.* No. 1:16-CV-43-DAS, 2016 WL 7443793, at *2 & n.2 (N.D. Miss. Dec. 22, 2016) (remanding where the vocational expert testified that there were, nationally, 24,551 binding winder jobs in the textile industry, 21,421 sack repairer jobs in the feed industry, and 20,432 cuff folder jobs in the knitting industry, but admitted that the industries involving those jobs were not prevalent in Mississippi and provided no estimates of the number of jobs within the state or region).

On specific facts of this case, the Court is persuaded that the Commissioner has satisfied his burden of showing jobs Plaintiff can perform that exist in significant numbers either in the region where such individual lives or in several regions of the country. Nothing in the DOT descriptions of the jobs suggests that they would be "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [Plaintiff] live[s]." *See* 20 C.F.R. §§ 404.1566, 416.966. The job the vocational expert identified as "product inspector," DOT No. 529.687-186 (45,000-plus jobs) is titled "sorter, agricultural produce" in the DOT, and it describes a job involving sorting and segregating agricultural produce. Plaintiff argues that it is "far from obvious that agricultural jobs are spread evenly throughout the regions of the United States," Pl's. Br. at 13, but that is not the standard. The issue is whether the jobs are available in significant numbers in several regions of the United States, not whether the jobs are "spread evenly" through the regions. Agricultural produce is certainly grown in several regions of the United States and sold in several regions of the United States, and the Court finds no reason to believe that it is not also sorted in several regions of the United States. With regard to the other jobs, assembler (DOT

794.687-042, 83,000 jobs, listed in the DOT as "punchboard assembler") and packer (DOT 920.685-026, 72,000 jobs, listed in the DOT as "bottle packer in the beverage industry"), Plaintiff argues generally that the jobs are antiquated or being hit by automation; however, she does not argue that they are isolated jobs existing only in a few regions, nor does the Court find any reason to so believe. The absence of any reason to believe these jobs only exist in a few isolated regions supports a finding that the ALJ's Step Five finding was supported by substantial evidence. *See John D.C.*, 2018 WL 6018859, at \*4-\*5 (finding that an argument that jobs of cleaner, kitchen helper, and laundry worker "would be frivolous" because those jobs are not regional); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187, at \*14 (M.D. Pa. Aug. 7, 2017) ("[T]here is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist in only a few locations.") (quotation marks omitted), *report and recommendation adopte*d, No. 3:16CV903, 2017 WL 3632496 (M.D. Pa. Aug. 23, 2017). *Cf. Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir.1997) (noting, in the related context of determining whether job numbers are "significant" at Step Five, "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation") (internal quotation marks omitted).

In addition, the total number of jobs identified here—200,000—is significantly higher than numbers from which courts have found it reasonable to infer that the jobs are available in several regions of the country. *See Gutierrez*, 740 F.3d at 529 ("[a] finding of 25,000 jobs likely does not fall into the category of "isolated jobs" existing in "very limited numbers") (quoting 20 C.F.R. § 416.996(b)); *Brininger*, 2017 WL 3634187, at \*15 (finding that 74,470 jobs was a number "large enough that it can reasonably be inferred that the jobs are not available only in isolated regions of the country").

In sum, the Court finds that in this case, substantial evidence supports the conclusion that there is work existing in "several regions of the country" that Plaintiff can perform. Although it would certainly be a better practice for the Commissioner to obtain specific evidence regarding the regional availability of jobs, the evidence obtained in this case was sufficient to satisfy the Commissioner's burden. Therefore, the Court will affirm the decision of the ALJ.

IV.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of February, 2020.